Argued July 12, affirmed September 27, 1973

WILSON ET UX, *Respondents, v.* MARTIN, *Appellant.*

514 P2d 341

*M. D. Van Valkenburgh,* The Dalles, argued the cause for appellant. With him on the brief were Heisler & Van Valkenburgh, The Dalles.

*Donald Winfree,* Portland, argued the cause for respondents. With him on the brief were Edwin J. Welsh, and Welsh, O'Donnell & Winfree, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN, HOWELL and BRYSON, Justices.

BRYSON, J.

Plaintiffs, personal representatives of the estate of Howard Belshee, brought this suit to set aside certain *inter vivos* transfers of property made by the deceased, Howard Belshee, to the defendant, Jessie M. Martin, and to obtain other equitable relief. The plaintiffs alleged fraud, misrepresentations, duress, undue influence, lack of consideration, and abuse of a confidential relationship on the part of defendant as grounds for the relief prayed for.

The trial court entered judgment in favor of plaintiffs and a written memorandum opinion specifically finding that defendant had failed to meet her burden of proof in rebutting the presumption of undue influence and duress. Defendant appeals.

We try the case de novo. A review of the evidence discloses the following, most of which is set forth in the memorandum opinion which was, by reference, made a part of the decree.

At the time of his death, Howard Belshee was 89 years old. He and his wife had no children and he had outlived most of the other members of his family. He was survived by three nieces, Marie Pierson, Emmalyn Wilson (a plaintiff), and Jessie Martin (defendant), daughters of each of the deceased's three brothers, and two grandnieces, daughters of Jessie Martin. In former years, defendant had been a frequent visitor to the deceased's home in Sherman County. However, she had not seen the deceased for several years prior to the time that she received a telephone call from one Tony Miller, who advised her that her uncle was alone and in need of someone to care for him.

After 1961 a couple by the name of Bartlett had

lived with and assisted decedent. When Mrs. Bartlett died this arrangement was terminated. In December 1969 the niece Emmalyn Wilson wrote to the defendant explaining the circumstances under which the deceased was living and indicated that some assistance must be provided. Defendant did not respond to this letter. The deceased refused to go to or stay in a nursing home. With no other alternative, the plaintiffs took turns staying with deceased, cleaning his house and preparing his meals. On November 1, 1970, the plaintiffs had to make their annual move to the mountains where Emmalyn Wilson could obtain relief from asthmatic and hay fever symptoms. Frank Belshee, the deceased's brother, came up from Portland each week during the summer and stayed three or four days to substitute for the plaintiffs. However, Frank Belshee was involved in an accident on one of the trips and died from the injuries he sustained.

During his lifetime, the deceased was an independent and dominant person. He had acquired three parcels of real property in The Dalles, two of which were rentals, a substantial bank account, and the balance due him on a note from Tony Miller. At the request of the deceased, plaintiff J. E. Wilson had been named as his conservator to assist in caring for his business affairs, including the collecting of rents and the paying of bills. Eventually the deceased and J. E. Wilson disagreed over the way the conservatorship was to be handled and it was mutually terminated by an order of the court dated July 31, 1970. J. E. Wilson transferred all the bank accounts to the deceased's name but retained some of his personal papers, the note of Tony Miller for $13,600, and the deeds by which deceased acquired title to his property.

On September 13, 1970, following the telephone

call from Tony Miller, defendant and her husband, Avery, made a trip to The Dalles. They found the deceased had difficulty getting in and out of his chair and that he staggered while walking. He was also taking medication. Defendant was concerned that no one was collecting the rents, and on September 16 defendant and her husband consulted with attorney Donald Heisler. It was determined that a guardianship should be initiated. A petition was prepared by Mr. Heisler, alleging the incompetency of the deceased. Before the petition was in final form the defendant and her husband discovered that all of the deceased's funds were in a checking account in the The Dalles Branch of the United States National Bank. Defendant prevailed upon the deceased to transfer the bulk of that money to a savings account and to invest in a certificate of deposit. Joint signature cards were executed, giving the right of survivorship to defendant in the event of Howard Belshee's death. On one of the signature cards the bank made a notation that the defendant was the deceased's daughter.

Defendant and her husband then contacted the plaintiffs and represented that they were initiating guardianship proceedings. They thereby obtained from J. E. Wilson the deeds to Howard Belshee's real property and the Tony Miller note for $13,600. Without advising Mr. Heisler of these transactions, the defendant and her husband then instructed Mr. Heisler to not proceed with the guardianship.

Defendant then tried to place the deceased in a retirement home. He was physically exhausted, and they had difficulty getting him to the home. Mrs. Ashburn, the operator of the retirement home, at first declined to keep the deceased but on certain representations she agreed to keep him at least a week.

Mr. Edgar M. Dick had been the attorney for the deceased and during his lifetime had prepared at least four wills for deceased, changing beneficiaries to accommodate for the death of the devisees or to make changes in specific gifts. The defendant and her husband were not aware of the beneficiaries named in the will of Howard Belshee which Mr. Dick kept in his office. After leaving Howard Belshee in the retirement home they went to Mr. Dick's office. Mr. Dick testified:

"A   Well, on the particular day, on the 21st of September, Mr. and Mrs. Martin came into my office and demanded the will of Howard Belshee, and I explained to them that I am not going to give out a will of somebody elses to anybody or let them know what is in that will, * * * they were rather adamant about getting that will. And they told me Howard [deceased] told them to go to me and have me give them his will * * *."

Mr. Dick finally telephoned the deceased at the retirement home and found him to be confused "and in a bad state mentally and that he was in a state where he did not have, obviously, testamentary capacity." However, the deceased told Mr. Dick he did not want him to give defendant and her husband his will. Mrs. Ashburn, operator of the retirement home, was present with the deceased at the time of the telephone conversation with Mr. Dick and she testified that the deceased kept saying he did not want to change his will. The last will executed by the deceased, on January 6, 1970, is now in probate in Circuit Court, Wasco County.

On September 22 and again on September 23 the deceased walked away from the Ashburn retirement home and went to his own home. On the evening of September 23 the defendant and her husband came to The Dalles and drove Howard Belshee to McMinnville

where they placed him in the McMinnville hospital about midnight of that evening. On September 28 he was moved to a nursing home. On the same day the defendant and her husband requested Mr. William Dashney, an attorney and neighbor of the defendant, to prepare a deed covering all of the deceased's real property, showing the defendant as the grantee subject to a life estate in the grantor, and to prepare a general power of attorney for the deceased naming Avery Martin, defendant's husband, as attorney in fact. Mr. Dashney had not seen or talked to Howard Belshee and he was not told by the defendant that she had asked Mr. Heisler to prepare a petition for the guardianship of deceased on the grounds of his incompetency. On September 24 Mr. Dashney took the deed and the power of attorney to the hospital and after going over them with the decedent, he obtained the signature of Howard Belshee to both instruments, which he notarized. The entire transaction took approximately 15 minutes, and Avery Martin was in the room at all times.

On October 2 defendant typed an endorsement on the Tony Miller note, naming herself as payee, and obtained the endorsement signature of Howard Belshee. On October 18 the defendant and her husband returned the deceased to his home in The Dalles, under the care of Mr. and Mrs. Murray. On November 7 he was taken to the Mid-Columbia Hospital and he died there on November 12, 1970.

The defendant admitted that she held a confidential relationship with Howard Belshee, that he wanted and needed her help, that he trusted and depended upon her for advice, and that he had confidence in what she recommended.

The defendant contends that the trial court erred

"in concluding that Howard Belshee did not have mental capacity to execute the transactions in question."

The trial court's written findings stated:

"Without reviewing all of the testimony given by the various witnesses, there is ample evidence that the decedent was in a debilitated physical and mental condition. He experienced dizzy spells, periods of weakness and confusion. * * *"

"* * * [H]e apparently was unable either to understand the affect [sic] of divesting himself of his property or to cope with the Martins in their exercise of influence upon him."

"Howard Belshee was confused, easily led and influenced by anyone in whom he had trust and confidence. * * * [H]e was totally incapable of transacting this type of business. * * *"

There is some conflict, as usual, in testimony from the witnesses called to testify in regard to the mental capacity of Howard Belshee during the period preceding his death when he transferred all of his assets to the defendant. However, our de novo review of the testimony relating to this finding of the trial court leaves no doubt that the great preponderance of the evidence shows that Howard Belshee was confused, impressionable and suffering from cerebral arteriosclerosis; he did not have the mental capacity to comprehend or exercise independent judgment and was a classic example of an 89-year-old man with advanced senility. This is consistent with the court having appointed a conservator for decedent prior to July 1970.

We have reviewed the medical and hospital records pertaining to Howard Belshee, beginning in 1963 and ending with his death on November 12, 1970. In 1963 he was diagnosed as being arthritic and senile.

On September 24, 1970, Leonard B. Hanson, M.D., examined decedent when he was admitted to the McMinnville hospital. The doctor's diagnosis was "cerebral arteriosclerosis—chronic brain syndrome." This was the same day that he executed the deed and power of attorney in favor of defendant and her husband and one week before he endorsed the Miller note to defendant as payee.

The final record from Mid-Columbia Hospital shows that decedent was admitted on November 7, 1970, and died on November 12, 1970. This report shows a final diagnosis as "Cerebrovascular Accident and Generalized Arteriosclerosis." The record is replete with evidence that the defendant was weak and ailing, and we conclude that the trial court did not err in its finding in this respect.

The trial court's findings also stated:

"The defendant held a confidential relationship with Howard Belshee. She [defendant] has failed to adduce any testimony to refute the presumption of duress and undue influence. * * *"

The defendant contends that the court erred "in requiring the grantees [grantee] to shoulder the burden of showing why the conveyances should not be cancelled because of a confidential relationship between uncle [decedent] and niece [defendant]."

The defendant argues that the burden of showing an abuse of a confidential relationship is upon the person seeking to set aside the transaction and relies principally on *Ingersoll v. Ingersoll,* 263 Or 376, 502 P2d 598 (1972). *Cf. Geiger v. Palmer,* 249 Or 123, 129-30, 437 P2d 750, 753-54 (1968); *Atkeson v. Evelyn E. Holly,* 258 Or 265, 269, 482 P2d 732, 734 (1971).

In deciding this case we conclude that it is not necessary to resolve this contention. Regardless of the rule of law as to the burden of proof, the plaintiffs by clear and convincing evidence have carried the burden of proving the allegations in their complaint.

The decree of the trial court is affirmed.